The judgment of the Court of Civil Appeals is affirmed.

CURETON, C. J.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

CAMP v. DALLAS NAT. BANK OF DALLAS et al.

No. 1430–5635.

Commission of Appeals of Texas, Section A.
April 1, 1931.

McCormick, Bromberg, Leftwich & Carrington and J. N. Townsend, all of Dallas, for plaintiff in error.

Cockrell, McBride, O'Donnell & Hamilton, and Goggans & Allison, and B. O. Baker, all of Dallas, for defendants in error.

CRITZ, J.

This suit was begun in the district court of Dallas county, Tex., by one Carnes as plaintiff, who was later displaced as such by Dallas National Bank, against G. B. Foster, J. L. Davisson, T. L. Camp, M. F. Spillers, John F. Bruce, and Automatic Inn Company, a corporation. The case was tried with a jury, but upon the conclusion of the evidence the court peremptorily instructed the jury to return a verdict for the plaintiff, Dallas National Bank, against Automatic Inn Company, T. L. Camp, M. F. Spillers, and John Bruce, for the sum of $22,632.06, with interest, and that the bank take nothing against G. B. Foster and J. L. Davisson. The verdict was returned in accordance with the instruction, and judgment entered in conformity thereto. Camp and the bank both appealed. None of the other defendants appealed or in any manner complained of the judgment of the district court. Of course Foster and Davisson had nothing to complain of. The Court of Civil Appeals in all things affirmed the judgment of the district court; Justice Looney dissenting as to that portion which affirms the judgment of the district court refusing the bank a judgment against Foster and Davisson. 21 S.W.(2d) 104, 105.

The bank and Camp have both prosecuted applications for writs of error to the Supreme Court, and both applications have been granted.

The Court of Civil Appeals has made a very full and fair statement of the facts and issues of the case, and we refer to and adopt the statement of that court, but, in order that this opinion may be as nearly complete within itself as practicable, we make the following statement, using the opinion of the Court of Civil Appeals in so doing:

It seems that Automatic Inn Company was a manufacturer of slot machines designed to sell sandwiches to the public. On September 30, 1926, after various negotiations and transactions between Automatic Inn Company, acting through its officers and agents on the one hand, and T. L. Camp and one Louis Lipsitz, who is dead and not sued, on the other, the following written contract was entered into between Automatic Inn Company and defendants, Foster and Davisson.

"This memorandum of contract made between Automatic Inn Company, Incorporated, of Dallas, Texas, party of the first part, and G. B. Foster, and J. L. Davisson, parties of the second part, witnesseth:

"The party of the first part has sold to parties of the second part one hundred (100) Automatic Inns, numbers 5146 to 5245, both inclusive, and in payment therefor parties of the second part have executed to party of the first part their promissory note in the sum of twenty thousand and no/100 ($20,000.-00) dollars, due ninety days after date to be renewed in keeping with the terms of this contract.

"The party of the first part has executed to parties of the second part a bill of sale and service contract to which reference is here made.

"Now in consideration of this purchase and. as an endorsement therefor, party of the first part obligates and bind itself that upon ten days notice from parties of the second part after all of said one hundred Automatic Inns have been installed and in operation for a period of ninety days, to the effect that they are not satisfied with their purchase, said party of the first part will within ten days after receipt of such notice sell said machines for the account of parties of the second part and refund to them their entire purchase money if said note has been paid by them or has been discounted and sold by party of the first part. If said note is in the hands of the party of the first part at said time they agree to cancel and return same to parties of the second part. If said party of the first part should fail to resell such machines within said ten days period and have negotiated or sold said note then in that event party of the

first part obligates and binds itself to return to party of the second part the entire purchase money.

"During the ninety days period in which these machines are to be in operation before parties of the second part are called upon to exercise their option under this contract, the dividends paid thereon shall belong to parties of the second part."

At the same time this contract was signed Foster and Davisson executed to the Automatic Inn Company the $20,000 note provided for in the contract. This note is in the regular form of a negotiable promissory note, and is the instrument here sued on.

It is shown that Foster and Davisson were merely bookkeepers for Lipsitz and Camp, respectively. It is further conclusively shown that Foster and Davisson had no interest in the contract or note which they signed, but that Foster joined in the execution of the instrument at the instance of Lipsitz, and Davisson at the instance of Camp.

At the same time the above contract and note were executed and delivered to Automatic Inn Company, T. L. Camp executed and delivered to such company the following written instrument:

"September 30, 1926.

"The Automatic Inn Company, Dallas, Texas. Gentlemen: Referring to contract this day made between your company and G. B. Foster and J. L. Davisson, wherein Foster and Davisson have executed to you a note for twenty thousand ($20,000.00) Dollars;

"This is to advise that this contract is made for the benefit of Louis Lipsitz and myself, and I hereby guarantee the payment of said note, or any renewal thereof.

"Yours truly, [Signed] T. L. Camp."

Also at this time the Automatic Inn Company. executed and delivered the following instrument:

"This agreement, made and entered into this 30 day of September, 1926, by and between the Automatic Inn Company, Inc., of Dallas, Texas, as party of the first part, and G. B. Foster and J. L. Davisson, of the city of Dallas, county of Dallas, state of Texas, as party of the second part, witnesseth:

"That in consideration of twenty thousand dollars ($20,000.00) cash in hand paid, receipt of which is hereby acknowledged, the first party hereby sells to second party 100 Automatic Inns machines, numbered respectively 5146–5245 inc., in consideration whereof first party does hereby convey and sell unto second party, all of said machines above described, and further agrees that within 90 days from date hereof the same will be manufactured and delivered to the said second

party at the factory of said seller in the City of Dallas, county of Dallas, state of Texas."

Further at the same time a five-year service agreement was executed by the same parties. All of the above agreements and written instruments were executed and delivered at the same time as a part of the same transaction and in pursuance of the same common end to be attained.

On October 29, 1926, the $20,000 note and guaranty here sued upon were duly transferred by the Inn Company to the Dallas National Bank, and it is the legal owner and holder thereof in due course. Spiller and Bruce guaranteed the payment of the note to the bank.

It is conclusively shown that neither Foster nor Davisson had any interest whatever, direct or indirect, in the transaction. They took no part in any of the negotiations connected with such transactions and never at any time asserted any ownership or control over the properties or other matters here involved. They were not consulted prior to the time they were called on to sign the note and other written instruments here involved, and, had the venture proved successful, would not have profited in any manner thereby, but all such profits and benefits would have gone to Camp and Lipsitz. Also while the properties and rights provided in the contract on the face thereof accrued to Foster and Davisson, the real true ownership was in Camp and Lipsitz, for whose benefits the contracts were made.

The record further shows that Camp and Lipsitz did not in person execute the papers and notes here involved because they did not want their names connected with the transaction for various personal and business reasons.

About November 1, 1926, Camp obtained certain information about Bruce, president of the Inn Company, which caused him to feel that he could not afford to be connected with him in a business way. This information was obtained prior to the installation of any of the sandwich machines purchased under the contract were installed or put in operation. As soon as Camp obtained this information, he informed Bruce, president of the company, that he would not proceed further with the contract, and demanded a return and cancellation of the contract and note. This demand was refused, or at least not complied with. Some but not all of the sandwich vending machines were actually installed by the Inn Company after the demand by Camp for a return of the contract and notes, and Camp did actually receive profits therefrom. It is shown, however, that he has tendered the return of these profits.

The Dallas National Bank sought recovery of the amount due on the note. It sued Fos-

ter and Davisson as makers; it sued Camp as a maker, and on his written contract of guaranty; and it sued the other parties on their written contract of guaranty of payment to the bank.

Camp defended on the ground that he did not sign the note; that, since the written guaranty signed by him was neither attached to nor made a part of the note, under the Negotiable Instrument Law of Texas, recovery could not be had against him in a suit on the note; that the written guaranty signed by him showed by its terms that it was special and personal to the Automatic Inn Company and could not be transferred; that the reference in the instrument of guaranty to the contract for the purchase of the machines destroyed the negotiability of the guaranty contract and also the negotiability of the note, if the guaranty should be considered as a part of the note; and that, by reason of these facts, the bank was not the holder of the note or the guaranty contract in due course, and therefore all of the defenses that he (Camp) had against the Inn Company are available to him against the bank.

After pleading as above, Camp pleaded fraud and misrepresentation as a defense. His pleadings and evidence will be treated as fully sufficient to establish such defenses, if they are available to him here.

The bank by its reply denied the allegations of Camp, and pleaded waiver and estoppel. The bank also pleaded that it was a purchaser in due course.

Foster and Davisson defended on the ground that the obligation was the real obligation of Camp and Lipsitz and so understood by all of the parties, and that the bank knew the facts surrounding the matter at the time they purchased the note. Foster and Davisson pleaded that, before they executed this note and the other instruments connected therewith, they were promised by Camp that he would execute the instrument of guaranty; that such instrument was executed and shows that the sole responsibility for the payment of the note was on Camp, and this was recognized by all parties to the various instruments; and that the bank purchased this note with full knowledge of this fact. The other guarantors made no defense to this action.

We treat the pleadings of all parties as sufficient to raise questions discussed by the Court of Civil Appeals and which we shall discuss.

As we understand the holding of the Court of Civil Appeals, it is to the effect that Foster and Davisson are not in law signers of the note except in a representative capacity as agents of Camp and Lipsitz, and that therefore Camp is treated as the real signer

and Foster and Davisson not treated as signers at all, except in a. disclosed capacity as agents. The Court of Civil Appeals bases its conclusion on the construction they give to section 20 of article 5932, and section 29 of article 5933, R. C. S. of Texas, 1925 (Texas Negotiable Instruments Act). The two sections read as follows:

Article 5932, § 20. "Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

Article 5933, § 29. "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

 A careful reading of section 20, supra, discloses that it applies to an instrument signed by an agent, and that it is therein provided that, where the instrument itself contains, or where words are added to the signature indicating that the signer signs as an agent for and on behalf of his principal, or in a representative capacity, he is not liable on the instrument if he is duly authorized. These provisions are qualified by the last clause in the section, "but the mere addition of words describing him as an agent, or filling a representative character, without disclosing his principal, does not exempt him from personal liability." We think this section of the act means to exempt agents who sign a negotiable instrument for their principal when they disclose in the body of the instrument or words are added to the signature showing who the principal is, and showing that the instrument is intended to bind the principal and that the agent is only a means used to create the instrument. The language of the section is susceptible of no other construction. When we test the instrument in the instant case, and in doing so we treat the guaranty as a part of the note, by the above construction of section 20, supra, there is absolutely nothing in the instrument to suggest that Foster and Davisson signed or intended to sign as agents of Camp and Lipsitz within the meaning of such section. In other words, there is absolutely nothing in the two instruments considered as one to indicate that Foster and

Davisson did not intend to be personally bound by the note.

We are further of the opinion that, when this transaction is considered as a whole and the note and guaranty construed as one, Foster and Davisson signed the note as accommodation makers for Camp and Lipsitz, and therefore their liability must be controlled by section 29, supra.

It is in effect provided by this section that an accommodation party is one who has signed the instrument as maker, drawer, etc., without receiving value, and for the purpose of lending his name to some other person. Under the statute such a person is liable to the holder for value, even if such holder knew, at the time of taking, the accommodation character of the person signing. We think further that the facts of this case and the instruments themselves show absolutely and conclusively that Foster and Davisson signed this note, not as agents for Camp and Lipsitz, but to accommodate Camp and Lipsitz, and to lend Camp and Lipsitz their names.

It is evident from what we have said that we held that the guaranty and the note constitute one instrument, and that the instrument is a negotiable promissory note. Also under the facts Camp is a principal signer and Foster and Davis are accommodation signers.

Camp contends that his defense of fraud should have been submitted to the jury. As we understand his contention in this regard, they are based on two propositions: (a) That the guaranty is not a part of the note, but a separate contract that does not constitute a negotiable instrument, and therefore he can assert the same defense against the bank that he could have asserted against the Inn Company; and (b) that, if the guaranty is a part of the note, it renders the note non-negotiable.

The contention that the guaranty is not a part of the note has already been disposed of by us.

As to the contention that the guaranty renders the note nonnegotiable, our statute, article 5932, sec. 3 subd. 2, R. C. S. of Texas 1925 (Negotiable Instruments Act), provides:

"Sec. 3. An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with:

"2. A statement of the transaction which gives rise to the instrument," etc.

In the case of Arrington v. Mercantile Protective Bureau, 24 S.W.(2d) 383, 384, section B of the Commission, speaking through Judge Leddy, construed the above statute in the following language: "In order to render an instrument nonnegotiable by reference to some extrinsic agreement, it must appear therefrom that the paper is to be burdened with the conditions of the agreement. There is nothing in the language used indicating anything more than a mere reference to the transaction out of which the obligation arose. It is in effect a recital that the obligation disclosed by the instrument is one given for the purchase of goods from the drawer by the acceptor."

When we come to examine the instrument here sued on, that is, the note and guaranty contract as one, there is nothing to indicate that the note is burdened with any extrinsic contract or agreement.

We recommend that the judgments of the Court of Civil Appeals and the district court be both reformed, and in part reversed and rendered, as follows:

(a) That the part of said judgments which award the bank a recovery against T. L. Camp be affirmed.

(b) That the part of said judgments which deny the bank a recovery against Foster and Davisson be reversed, and judgment here rendered against them, jointly and severally, in favor of the bank.

(c) That execution issue against Camp before it issue against Foster and Davisson or either of them.

(d) That the bank have judgment against Camp, Foster, and Davisson jointly and severally for all costs of appeal.

(e) That Foster and Davisson, and each of them, have judgment over against Camp for any sum or sums of money they may be compelled to pay on this judgment.

(f) That in all other respects the judgments of the two lower courts remain undisturbed.

CURETON, C. J.

Judgment of the Court of Civil Appeals in part reversed and rendered, in part reformed, and, as reformed, affirmed, and in part affirmed, as recommended by the Commission of Appeals.