Paul DONALD, Appellant,

v.

The FORT WORTH NATIONAL BANK, Independent Executor of the Estate of R. Lee Morris, Dec., Appellee.

No. 17046.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 26, 1969.

Jack Connell, Bowie, for appellant.

McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, and Atwood McDonald, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Suit was for personal judgment upon demand promissory notes against Paul Donald and S. M. Stewart. A joint and several judgment was rendered in behalf of the Executor of the Estate of the Deceased. Only Paul Donald appealed.

The Executor proved its *prima facie* case by introducing the notes. The burden thus shifted to the defendants. S. M. Stewart made no move to defeat judgment against him. Paul Donald sought to escape liability by establishing from a preponderance of the evidence that he was merely an "accommodation endorser" of the notes for the accommodation of the deceased and not for S. M. Stewart, and that there was a total absence of consideration to him with respect to the transaction(s).

Evidence came from Paul Donald in his own behalf, and from Robert Sprowls, Executive Vice-President of the Chico State Bank of Chico, Texas, in behalf of the estate's Executor. The latter had all pertinent bank records of the Chico bank throwing light on the transactions.

It was the theory of the Executor that both transactions were actually one, wholly transpiring on November 13, 1964. It appeared that the loan limit for any one transaction by the Chico bank on said date was $17,500.00. At the time R. Lee Morris (the deceased for whose estate the Executor was plaintiff) was a loan officer for the bank. He also made a practice of lending money out of his private funds as well as making bank loans. As an individual he owned some cattle which he desired to sell for $35,000.00. He agreed to sell the cattle and Paul Donald and S. M. Stewart, acting together, agreed to buy them for $35,000.00. Donald and Stewart paid for the cattle by notes. One of the note transactions was receipt by them of $17,500.00 from the bank, in exchange for which they jointly executed the note, secured by chattel mortgage upon the cattle purchased, with the money thus borrowed delivered over to R. Lee Morris. The other note transaction was by Donald and Stewart jointly executing a note for another $17,500.00, secured by chattel mortgage upon the same cattle, direct to R. Lee Morris. About five months later Morris paid the $17,500.00 owing by Donald and Stewart to the bank, and received an assignment of it, thus making the entire $35,000.00 due him individually.

It was the theory of Paul Donald that it was several days subsequent to November 13, 1964 before he ever heard of any sale of the cattle in question. He learned of it through a telephone call from Morris, who prevailed upon him to come to Chico, and because of existent or potential complaints of bank examiners signed the note and chattel mortgage of the bank, and for good measure also signed the note and chattel mortgage given direct to Morris, all as an accommodation to Morris alone. His un-

derstanding was that the cattle had been sold to Stewart. Before he affixed his signature the aforementioned note and mortgage instruments bore the signature of S. M. Stewart only. He testified that there was no legal consideration whatever for his acts executing the instruments, and that furthermore Morris promised him that he (Morris) would never "look to him" for any payment.

The notes remained wholly unpaid at time of Morris' death. The cattle listed as security have apparently disappeared.

Paul Donald's defense failed before the jury. It refused to find that Morris sold the cattle to Stewart alone; and it refused to find that Morris represented to Donald that if he would sign the notes he would not look to him (Donald) for payment.

The verdict of the jury was returned on November 19, 1968. According to an affidavit of Paul Donald it was on that date, but following the return of the jury's verdict, that his attention was drawn to a letter written and posted four days previously by a brother, J. M. Donald, his former law partner. His affidavit was to the effect that the letter apprised the addressee, a former secretary of his, that J. M. Donald had talked with R. Lee Morris "during his lifetime and that the said Morris had stated that he guessed he was to blame for he had given S. M. Stewart permission to remove the cattle and make sale of them."

Judgment of the trial court was rendered on November 26, 1968. An Original Motion for New Trial was filed on December 2, 1968. Nothing therein mentioned the ground of newly discovered evidence. An Amended Motion for New Trial was filed on December 20, 1968. Therein such ground was mentioned. In the affidavit of Paul Donald, the language heretofore quoted relative to the letter from J. M. Donald was set out, with it being further sworn therein by him, as follows: "That after noting the contents of said letter (of J. M. Donald), for the first time, your defendant, through his attorney, contacted the said J.

M. Donald personally and learned from him, for the first time, that he had knowledge of certain of the material issues in this case, as substantially stated in the affidavit of the said J. M. Donald, which is attached hereto and made a part of this motion for all purposes."

The language in the affidavit of J. M. Donald which was attached to and incorporated as a part of the Amended Motion for New Trial was as susceptible of being interpreted to state that R. Lee Morris had told him that Paul Donald's act in executing the notes was at the request of Stewart as it was being interperted to state that his execution thereof was at the request of Morris. However, a concluding sentence of the material paragraph, relating to statements made by Morris to J. M. Donald, reads: "That he (R. Lee Morris) knew that Paul (Donald) was not liable because he signed merely at his request for he knew that the cattle were worth the amount due but could not be located to be foreclosed on."

J. M. Donald was not tendered as a witness on the hearing of the Amended Motion for New Trial. We do not consider that the affidavit of J. M. Donald was sufficient to establish that character of newly discovered evidence which might have entitled Paul Donald to a new trial. Certainly consideration thereof left it to the trial judge's sound discretion to deny a new trial. The letter heretofore mentioned as written by J. M. Donald to the former secretary was not in evidence.

■ We hold that J. M. Donald should be considered as a party interested in the welfare of Paul Donald and in the outcome of the suit despite the existent estrangement of the brothers shown by the affidavit of Paul Donald. The testimony on the hearing of the motion was by way of affidavit only. Such was not clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon and was not of a character which could be contradicted

through counter-affidavits or countering testimony readily available to the party who had obtained judgment in the case. Since the new trial was refused it would be presumed that the trial judge refused to accord truth thereto, as would be his privilege. In any event our conclusion is that the motion did not present grounds for granting a new trial upon newly discovered evidence.

■ Furthermore, the trial judge, in the exercise of the discretion with which he is charged, upon consideration of the ground of newly discovered evidence, was obliged to consider whether the judgment probably would have been different if the newly discovered evidence had been available and presented upon the trial which had been held and/or its probable effect upon the result of another trial. The testimony of J. M. Donald would not have probably caused the jury to render a different verdict. See cases under Texas Digest "Appeal & Error" ☞1015(5), "Decision on motion for new trial—For errors or irregularities, surprise, or newly discovered evidence."

Thrust of Paul Donald's remaining points of error is that in the absence of any finding that he was connected with the cattle sold by Morris, or that he received any interest in same (because the court refused to submit specially requested issues which would resolve that question), his specially requested issues by answer to which the jury would have resolved the question of whether he was merely an "accommodation party" to R. Lee Morris were erroneously refused and a new trial therefore required. In this connection he ignores or overlooks any question of whether Morris parted with consideration to Stewart in reliance upon him.

The Court's Charge is not a part of the transcript on file. For the purpose of our discussion we will assume that it contained an instruction defining the term "accommodation party" as was set out in the statute in effect on date the notes in question were signed. See V.A.T.S., Title 98, "Uniform Negotiable Instruments Act", Art. 5933, "Consideration", Sec. 29, "Liability of accommodation party". The writer has always considered an inept and misleading definition in the language of the definition has now been corrected by the provisions of the statutory law subsequently placed in effect. See V.A.T.S., Business and Commerce Code, the Uniform Commercial Code, Sec. 3.415, "Contract of Accommodation Party".

■ However, even at the time applicable to the transaction(s) upon which Paul Donald was sought to be charged it was clear in the law that where the "accommodation" of the signatory upon a note was for the obligor, to accommodate a co-signer, such accommodating party becomes liable to the payee as a surety on the instrument for his co-maker; and it is only in those cases where the note is executed for the sole purpose of accommodating the payee, as for the aid in the payee's intended negotiation, thereby to receive credit, that there is existent the character of "accommodation" which, as applied to the accommodated party or a subsequent holder who takes with knowledge of the fact, would enable the signatory to escape liability. See First Nat. Bank of Fort Worth v. Brown, 172 S.W.2d 151 (Fort Worth Civ.App., 1943, writ ref., w. o. m.); Camp v. Dallas Nat. Bank, 36 S.W.2d 994 (Tex.Com.App., 1931); Reed v. Buck, 370 S.W.2d 867 (Tex. Sup., 1963); Black v. Frank Paxton Lumber Company, 405 S.W.2d 412 (Dallas Civ. App., 1966, writ ref., n. r. e.).

■ Since it is without question that the face of the note shows that Paul Donald presumably executed the note for consideration to himself, or in any event for consideration to S. M. Stewart; and since the jury, by its answer to special issues effectively found against Donald's contention that he was an "accommodation party" on the notes for the payee thereof by finding Morris did not represent that Donald would not be "looked to" for payment the record factually reflects Donald's liability. Had

the trial judge given the specially requested issues desired by Donald he would have done a useless thing. He did not err in refusing to submit them.

Judgment is affirmed.