## CAMP v. DALLAS NAT. BANK et al.
### (No. 10430.)

Court of Civil Appeals of Texas. Dallas. Sept. 23, 1929.

Rehearing Denied Nov. 2, 1929.

J. N. Townsend, of Dallas, for appellant.

Goggans & Allison, B. O. Baker, and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for appellees.

JONES, C. J., In a suit in a district court of Dallas county the Dallas National Bank recovered judgment in the sum of $22,672.06, being the amount due on a note in the principal sum of $20,000, against T. L. Camp, M. F. Spillers, John F. Bruce, and the Automatic Inn Company, Incorporated, on peremptory instructions by the court. Judgment was also rendered on peremptory instructions in favor of G. B. Foster and J. L. Davisson, codefendants in the suit. T. L. Camp, who will be styled appellant, has perfected an appeal from this judgment. The Dallas National Bank, hereafter styled appellee, filed and here presents cross-assignments of error as to that portion of the judgment in favor of Foster and Davisson, who will be referred to by name. The other defendants in the suit did not appeal from the judgment against them. The facts necessary to a consideration of the questions involved in a review of this case are:

The Automatic Inn Company, Incorporated, was a manufacturer of slot machines, designed to supply the consuming public with sandwiches and pies. This company desired to interest appellant, T. L. Camp, and Louis Lipsitz in its machines, and its officers had various communications with said parties, with the result that on September 30, 1926, the following contract was duly entered into between the Automatic Inn Company, Incorporated, contracting through its president, John F. Bruce, and Foster and Davisson, contracting for the benefit of Camp and Lipsitz:

"This memorandum of contract made between Automatic Inn Company, Incorporated, of Dallas, Texas, party of the first part, and G. B. Foster and J. L. Davisson, parties of the second part, witnesseth:

"The party of the first part has sold to parties of the second part one hundred (100) Automatic Inns, numbers 5146 to 5245, both inclusive, and in payment therefor parties of the second part have executed to party of the first part their promissory note in the sum of twenty thousand and no/100 ($20,000.00) dollars, due ninety days after date to be renewed in keeping with the terms of this contract.

"The party of the first part has executed to parties of the second part a bill of sale and service contract to which reference is here made.

"Now in consideration of this purchase and as an endorsement therefor, party of the first

part obligates and binds itself that upon ten days notice from parties of the second part after all of said one hundred Automatic Inns have been installed and in operation for a period of ninety days, to the effect that they are not satisfied with their purchase, said party of the first part will within ten days after receipt of such notice sell said machines for the account of parties of the second part and refund to them their entire purchase money if said note has been paid by them or has been discounted and sold by party of the first part. If said note is in the hands of the party of the first part at said time they agree to cancel and return same to parties of the second part. If said party of the first part should fail to resell such machines within said ten days period and have negotiated or sold said note then in that event party of the first part obligates and binds itself to return to party of the second part the entire purchase money.

"During the ninety days period in which these machines are to be in operation before parties of the second part are called upon to exercise their option under this contract, the dividends paid thereon shall belong to parties of the second part."

At the same time a note in the sum of $20,000, representing the price of the machines described in the contract, was duly executed to the order of the Automatic Inn Company by Foster and Davisson, acting for appellant Camp and Lipsitz. This note was in the regular form of a negotiable promissory note, with the usual provision for attorney fees. At the time of the execution of the contract and note, Foster was the bookkeeper for Lipsitz and Davisson the bookkeeper for appellant. The former joined in the execution of these instruments at the request of Lipsitz, and the latter joined in such execution at the request of appellant. At the same time appellant prepared and delivered to the Automatic Inn Company the following instrument:

"September 30, 1926.

"The Automatic Inn Company, Dallas, Texas. Gentlemen: Referring to contract this day made between your company and G. B. Foster and J. L. Davisson, wherein Foster and Davisson have executed to you a note for twenty thousand ($20,000.00) dollars;

"This is to advise that this contract is made for the benefit of Louis Lipsitz and myself, and I hereby guarantee the payment of said note, or any renewal thereof.

"Yours truly,     [Signed]   T. L. Camp."

At the same time the Inn Company, through its president, executed and delivered the following instrument as a bill of sale:

"Bill of Sale.

"This agreement, made and entered into this 30 day of September, 1926, by and between the Automatic Inn Company, Inc., of Dallas, Texas, as party of the first part, and

G. B. Foster and J. L. Davisson, of the city of Dallas, county of Dallas, state of Texas, as party of the second part, witnesseth:

"That in consideration of twenty thousand dollars ($20,000.00) cash in hand paid, receipt of which is hereby acknowledged, the first party hereby sells to second party 100 Automatic Inn machines, numbered respectively 5146–5245 inc., in consideration whereof first party does hereby convey and sell unto second party, all of said machines above described, and further agrees that within 90 days from date hereof the same will be manufactured and delivered to the said second party at the factory of said seller in the city of Dallas, county of Dallas, state of Texas.

"In witness whereof, the said seller has caused this instrument to be executed the day and year first hereinabove written.

"Automatic Inn Company, Inc.,
"By J. F. Bruce, President-Secretary."

At the same time a five-year "service agreement" was executed by the same parties. This agreement provided for the furnishing of the sandwiches and pies by the Inn Company to the purchasers of the machine at a named price, together with other matters not necessary to mention for this discussion. All of these instruments were executed contemporaneously and together completed the transaction between the Inn Company and appellant and Lipsitz. On October 29, 1926, the note and guaranty were duly transferred by the Automatic Inn Company to appellee, and it is the holder in due course of such instruments. A written guaranty of Spillers and Bruce, officers and main owners of the Inn Company, was delivered to the bank a few days after the purchase.

In all of the negotiations that preceded the execution of the instruments above described, neither Foster nor Davisson was consulted, and when they were each called upon to sign the various instruments it does not appear that any explanation was made to them by any of the parties, other than the statement by appellant, that the transaction was his and Lipsitz's, and that he would give his written guaranty of the payment of the note. The profits derived from the operation of the machines installed did not go to either Foster or Davisson, but to the men for whom they acted. It appeared at the trial of the case that Lipsitz was dead. Appellant's explanation of why he and Lipsitz did not execute the papers is, in effect, that Lipsitz was a financier, well known throughout a large territory, and that he (Camp) was known as a business man to a great many people, and that for this reason they did not want their names connected with the venture until the success of such venture had been fully established; that their names might be used by the Inn Company for the purpose of securing investments from others, and this they did not want done, until they

had become fully satisfied that it would be a successful business venture.

About November 1, 1926, appellant obtained information, in reference to the character and business integrity of Bruce, president of the corporation, from which he felt that he could not afford to have a connection with any business in the management of which Bruce was connected. This information came before any of the machines purchased under the contract were installed for operation. As soon thereafter as appellant could get in communication with Bruce, he informed him of this fact, and demanded a cancellation of the contract and return of the note. This demand was not complied with by Bruce. Some of the machines were installed and appellant received the profits from them after this demand. A few days after the discovery in reference to Bruce that caused appellant to demand cancellation of the note, appellant received information that appellee was the purchaser of the note and his guaranty. This was some time about November 10, 1926, but he never informed appellee that he had repudiated the contract until December 29, 1926, two days before the maturity of the note, and after he had received appellee's notice of its maturity, at which time he informed the bank he would not pay it, because he had canceled the contract. The Automatic Inn Company made appellee its depositing bank, and on September 30, 1926, the date of the execution of the note, such company had on deposit with appellee the sum of $75,865.47; on the last day of October, $35,262.64; on the last day of November, 1926, $12.815.47; and on the day the note matured, $952.66.

By appropriate pleadings appellee sought recovery of the amount due on the note against Foster and Davisson, as makers, against appellant on the note and his written guaranty, and against the other parties on their written guaranty to appellee. Appellant defended on the ground that as his signature did not appear on the note, and that as the instrument in writing, alleged to be a guaranty of the payment of the note, was neither attached to it nor made a part thereof, under the Negotiable Instruments Law, recovery could not be had against him in a suit on the note; also because the written instrument, alleged by appellee to be a guaranty, showed by its terms that it was a special guaranty for the benefit only of the Automatic Inn Company, it could not be transferred to appellee on its purchase of the note; also on the ground that the reference in the guaranty to the contract for the purchase of the machines destroyed the negotiability of the guaranty, and the negotiability of the note, if the guaranty should be considered a part of the note; that by reason of these facts appellee was not a holder in due course, and all the defenses available to appellant against the original payee became and were valid defenses against appellee. With these allegations as a basis, appellant alleged that he was induced to enter into the contract by reason of misrepresentations and fraud perpetrated upon him by the Automatic Inn Company, through its officers and agents, and that by reason of such fraud no valid obligation was ever created against him. These pleadings are very full, and on their face show a valid defense against appellee's suit, unless appellee is shown to be a holder in due course.

Appellee answered this pleading by supplemental petition, in which it denied all of the acts of misrepresentation and fraud pleaded by appellant, and also in which it pleaded very fully waiver and estoppel on the part of appellant to urge the defenses of fraud and misrepresentation. The pleadings of all parties in this respect are full and complete, but in the view we take of this case it is not necessary to state them specifically. Appellant tendered into court the amount received as profits on the machines installed.

Foster and Davisson defended on the ground that, while they were the apparent makers of the note, in truth and in fact the note was not their obligation, but was the obligation of appellant and Lipsitz, so understood by the parties at the time of the execution of the note, and that appellee knew this fact when it became the purchaser of the note; that before they executed the various instruments connected with this suit they were promised by appellant that he would execute the instrument of guaranty; that this instrument conclusively shows that sole responsibility for the indebtedness represented by the note was assumed by appellant, that this was recognized by the parties to the instruments, and that appellee purchased the note with full knowledge of such fact. The undisputed evidence establishes these allegations. The other guarantors do not appear to have made any defense.

As we understand the effect of appellant's assignments of error, he seeks a reversal of this case, and the rendering of a judgment in his favor, on the grounds (a) that the trial court should have given his requested peremptory instructions, on his theory that the written guaranty issued by him was a special guaranty to the Automatic Inn Company, and could not be enforced by appellee; and (b) that, the note and the guaranty being separate and distinct instruments, and appellant's signature not appearing on the note, recovery against him could not be had in a suit on the note. Appellant further urges that, if he is mistaken in his right to have this case reversed and rendered on the above grounds, then he contends that the case should be reversed and remanded because of the action of the trial court in giving peremptory instructions against him in favor of appellee, for the reason that appellant's written guaranty shows on its face that it is not negotiable, and

therefore subject in the suit by appellee to any defense that existed in his favor against the Automatic Inn Company, the original payee; that as against the original payee he had a valid defense, because of his allegations of fraud and misrepresentations at the time he executed the guaranty, which allegations were supported by sufficient evidence to give him the right of a submission of this issue to the jury. These contentions are based on appropriate assignments of error and propositions of law.

Appellee urges its contentions, as reflected by its pleadings, in appropriate counter propositions to the effect that the court did not err in giving the peremptory instruction against appellant, because the note and the guaranty, being executed at the same time, in reference to the same subject-matter, must be construed together and given the effect as though they were one and the same instrument, and that, as the undisputed evidence shows that appellee was a holder in due course, the court did not err in giving peremptory instructions against appellant.

In reference to the issue of fraud and misrepresentations, these counter propositions contend that the evidence offered by appellant failed to establish a prima facie case on any of the grounds alleged, and that, even under appellant's theory of appellee not being a holder in due course, the court did not err in giving the peremptory instructions. On its cross-assignments of error against Foster and Davisson, appellee contends that, under the Negotiable Instruments Law (Rev. St. 1925, arts. 5932–5960), these parties were liable as the makers of the note, notwithstanding the truth of all of the defensive matters alleged and proven by them. Foster and Davisson urge upon this court, by an appropriate counter proposition, their defenses above stated.

■ The note executed by Foster and Davisson is a negotiable instrument. This note was purchased by appellee for a valuable consideration before maturity, without notice of the existence of any defense by the makers, and unquestionably appellee thereby became a holder in due course, with all of the rights attendant upon such holder of commercial paper, unless the instrument executed by appellant modified or restricted such right. This instrument, describing itself as a guaranty, was executed by appellant at the same time the note was executed, and contains recitations to the effect that the note was executed by Foster and Davisson as a consideration for the contract that day executed between the Automatic Inn Company, the payee, and the makers of the note. It further recites, in effect, that the contract was made for the benefit of appellant and Lipsitz, for which reason "I hereby guarantee the payment of said note, or any renewal thereof." The effect of this instrument is to make appellant at least primarily responsible to the Automatic Inn Company for the payment of this note, according to its tenor and effect.

■■ Does the instrument allow the construction that it is merely a special guaranty, and can be enforced only by the Automatic Inn Company? We think not. It contains no such restrictions, and no words that can fairly be construed as such a restriction. It is in the regular form of a general guaranty, although addressed to the payee in the note, but as the guaranty of a negotiable instrument this fact does not even tend to convey the meaning that such payee was alone to reap the benefit of the guaranty. This instrument was executed at the same time, for the same purpose (consideration of a valid and completed contract), and in the course of the same transaction in which the note was executed. This being true, under well-settled rules of law, the note and guaranty must be considered, in effect, one instrument, and construed as one. 3 R. C. L. 870; 8 C. J. 196; and the authorities cited in each text. Applying such rule to the two instruments under consideration, it must be concluded that Foster and Davisson executed the note for the sole benefit of appellant and Lipsitz, and that appellant executed his guaranty, not only for the benefit of the makers of the note, but as a general guaranty of the note, and to show further that the obligation created by them was not that of the makers, but the obligation of himself and Lipsitz.

■ The reference in the guaranty to the contract, forming the basis for the execution of the note, is no such reference as would render the note, when construed with this written guaranty, a nonnegotiable instrument. When we refer to the contract itself, it shows in unmistakable language that it was contemplated at the time that the note would be negotiated, for it makes provision for any rights that might be claimed by appellant against the Automatic Inn Company, in case the note is negotiated.

■■ We therefore hold that the written guaranty became a part of the note, and that, as there is no contention that appellee knew of the defenses of fraud and misrepresentation at the time these instruments were executed, as the transferee of the note, it is a holder in due course, and not subject to the defense that its execution was procured by fraud and misrepresentation. As this necessarily follows from a construction of the written instruments themselves, the court did not err in giving peremptory instruction in favor of appellee against appellant.

Did the court err in giving peremptory instruction in favor of Foster and Davisson, as contended by appellee in its cross-assignments of error? This must be determined by the provisions of our Negotiable Instruments Act. Section 20, art. 5932, Rev. St. 1925, being a part of such act, reads:

"Where the instrument contains or a person adds to his signature words indicating

that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

Section 29 of article 5933, Rev. St. 1925, a part of such act, reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

We have already seen that the note and guarantee must be construed together, and that in law these two instruments must be given the same effect as though they were in fact a single instrument. When given this effect, the conclusion is inevitable that the provisions of section 20, above quoted, must control when construing the rights of the parties under the Negotiable Instruments Act. It clearly and unmistakably appears that the instrument contains words indicating that Foster and Davisson signed such instruments for and on behalf of appellant and Lipsitz, who were the actual principals in the transaction with the Automatic Inn Company, which transaction brought into existence the obligation of the instruments under review. This plainly appearing in the instruments purchased by appellee, it was charged with the provisions of said section 20, and must be considered as having purchased the instruments with the knowledge that Foster and Davisson were not the responsible parties on the obligation, and that recovery could not be had against them.

To hold that section 29, above quoted, applies to this case, and that Foster and Davisson are accommodation makers within the provisions of said section 29, would be a holding that the two said sections of our Negotiable Instruments Law are in contradiction, and that section 29 destroys the functions of section 20. No such construction of different sections of the same legislative enactment can be allowed, unless such is the only construction that the enactments will permit. These two sections were intended to apply to different conditions under which negotiable instruments are signed. Section 20 clearly applies where such instrument is signed by an accommodation party, and the one for whom he signed is disclosed by the instrument, together with the facts, which show that the obligation created is not the obligation of the one so signing, but is the obligation of the real principal, whose name and responsibility the instrument discloses.

We conclude that, when a negotiable instrument is signed by a party in compliance with the provisions of section 20, the instrument is thereby taken out of the provisions of section 29, and that the Legislature intended the two enactments to be so construed.

We therefore hold that the court did not err in giving peremptory instructions in favor of Foster and Davisson, and overrule appellee's cross-assignments of error.

We have carefully considered all of the other assignments of error, not herein discussed, and have found that none of them point out reversible error. For the reasons above stated, it is our opinion that this case should be affirmed.

Affirmed.

### On Rehearing.

PER CURIAM. Former opinion adhered to.

LOONEY, J. (dissenting). In its motion for rehearing, Dallas National Bank contends that this court erred in affirming the judgment below as to Foster and Davisson. I am of opinion that this contention is well taken, and, as the majority adheres to the decision heretofore announced, I will state briefly the reasons for my dissent.

In holding Mr. Camp liable on the note, as maker, we proceeded on the theory that the letter written by him to the Automatic Inn Company, of date September 30, 1926, and the note signed by Foster and Davisson, without consideration moving to them, for the benefit of Mr. Camp and Louis Lipsitz, must be construed as one instrument, because executed at the same time, by the same parties at interest, as parts of the same transaction, and intended to accomplish the same general object. 3 R. C. L. 870; 8 C. J. 196; 13 C. J. 528, § 487. The instrument thus reconstructed, interpolating language used by Camp in his letter to the Automatic Inn Company, contains words indicating that the note was made for the benefit of himself and Mr. Lipsitz, the real parties at interest; hence we held that the case was controlled by section 20 of article 5932, Rev. Civ. St. 1925 (of the uniform Negotiable Instruments Act), and that Camp alone was liable as maker of the note. The reasons that actuated the court in deciding the case in favor of Foster and Davisson were stated in the original opinion by Chief Justice JONES as follows:

"To hold that section 29, above quoted, applies to this case, and that Foster and Davisson are accommodation makers within the provisions of said section 29, would be a holding that the two said sections of our Negotiable Instruments Law are in contradiction, and that section 29 destroys the functions of section 20. No such construction of different sections of the same legislative enactment can be allowed, unless such is the only construction that the enactments

will permit. These two sections were intended to apply to different conditions under which negotiable instruments are signed. Section 20 clearly applies where such instrument 'is signed by an accommodation party, and the one for whom he signed is disclosed by the instrument, together with the facts, which show that the obligation created is not the obligation of the one so signing, but is the obligation of the real principal, whose name and responsibility the instrument discloses. We conclude that, when a negotiable instrument is signed by a party in compliance with the provisions of section 20, the instrument is thereby taken out of the provisions of section 29, and that the Legislature intended the two enactments to be so construed. We therefore hold that the court did not err in giving peremptory instructions in favor of Foster and Davisson, and overrule appellee's cross-assignments of error."

I have reached the conclusion that the case is not controlled by section 20, art. 5932, but think it should be controlled by section 29, art. 5933, of the Negotiable Instruments Act. Section 20, art. 5932, reads as follows:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

This provision of the statute is only applicable, in my opinion, where a person purports to sign an instrument as agent, or in a representative capacity, for another, and in such case cannot be held personally liable, provided (a) he was duly authorized to act; (b) and the instrument contains, or he adds to his signature, words indicating that he signed in a representative capacity, or on behalf of a principal; and (c) discloses the principal for whom he acts; in other words, to escape personal liability, the act of the agent or representative must be legally sufficient to fix the liability of the principal. This statute asserts nothing new, as the principle announced is a part of the law of agency. In the early case of Sydnor v. Hurd, 8 Tex. 98, Judge Wheeler said:

"The doctrine on this subject, as applicable to agents, in general, engaged in commercial dealings, drawing, indorsing, and accepting bills, etc., is that 'if, from the nature and terms of the instrument, it clearly appears, not only that the party is agent, but that he means to bind his principal, and to act for him, and not to draw, accept, or indorse the bill on his own account, that construction will be adopted, however inartificial may be the language, in furtherance of the actual intention of the instrument. But if the terms of the instrument are not thus explicit, although it may appear, that the party is an agent, he will be deemed to have contracted in his personal capacity.' Story on Agency, §§ 155, 156, 157, 158, 159. 'A person contracting as agent will be personally liable, whether he is known to be an agent, or not, in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility, express, or implied.' Id. § 269. * * * If, the agent does not give a right of action against his principal, the law holds him personally liable. * * * The agent 'must see to it that his principal is legally bound by his act.'"

The liability of Mr. Camp as maker was not fixed by any act of Foster and Davisson; he fixed his own liability by the letter he wrote, when it and the note are construed as one instrument; hence the question as to their agency, or representative capacity to bind him, could not arise. I believe we correctly construed, as one instrument, the letter written by Mr. Camp to the Automatic Inn Company and the note payable to Automatic Inn Company, contemporaneously signed by Foster and Davisson (for the benefit of Camp and Lipsitz), and as thus construed, Camp was shown to be a maker of the note, just as though he had originally signed with Foster and Davisson. But to hold that he is the only one liable as maker is to completely ignore the fact and the legal significance of the unqualified execution of the note by Foster and Davisson. The execution of the note by them certainly meant something; they either fixed their own, or the liability of Camp and Lipsitz, which was it? No word is contained in the note, or added to their signatures, indicating that they signed as representatives, or on behalf of Camp and Lipsitz, nor did they disclose the name of any principal for whom they purported to act.

The fact that the contract was made for the benefit of Camp and Lipsitz appears only in the letter from Camp to the company; therefore, to attach any meaning whatever to their act in signing the note, it must be held that they signed on their own responsibility as accommodation comakers. For this reason, I believe the case should be controlled by the provisions of section 29, art. 5933, R. C. S. 1925 (of the Uniform Negotiable Instruments Act), as follows:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

If under this provision of the statute Foster and Davisson are held to be comakers of

the note, for the accommodation of Camp and Lipsitz, no violence will be done any provision of the contract, and full legal effect will be given the signatures of Foster and Davisson to the note; but to hold otherwise is to say that their acts in signing the note were and are meaningless and of no significance. I think the liability of Mr. Camp as a comaker of the note is apparent, when the note and the letter written by him are read as one instrument, and that the liability of Foster and Davisson was fixed by their unqualified acts in executing the note.

That an accommodation maker may be a comaker with the party accommodated, so far as a holder for value is concerned, is well settled. See First State Bank v. Hare (Tex. Civ. App.) 152 S. W. 501, 502; Edmonston v. Ascough, 43 Colo. 55, 95 P. 313; 8 C. J. 277, § 432. However, as between these accommodation makers and Camp, under the facts stated in his letter to the Automatic Inn Company, they are but sureties, and as against Camp are entitled to be protected as such. First State Bank v. Hare, supra.

But, if it can be correctly said that there exists such a diversity of parties as to preclude the reading of the note signed by Foster and Davisson, and the letter written by Mr. Camp to the Automatic Inn Company, as one instrument, and that each should be treated separately, then we have this situation; that is, the liability of Foster and Davisson to the bank on the note would stand unrelieved by any fact or circumstance, and the liability of Camp as guarantor of the note, based on his letter of guaranty, would be clear and undoubted. So it is immaterial whether these instruments are construed as one or enforced separately, for in either event, as I view the case, the bank was and is entitled to recover, not only against Camp, but against Foster and Davisson as well.

For these reasons, I am of opinion that the motion of the bank for rehearing, as to Foster and Davisson, should be granted; that the judgment of this court heretofore rendered in their favor, affirming the trial court, should be set aside; that the judgment of the trial court in this respect should be reversed, and judgment here rendered in favor of the bank.