**WALTER E. HELLER & COMPANY, Inc.,**
Appellant,

v.

**W. M. ALLEN and M. H. Allen, Jr., Appellees.**

No. 221.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 9, 1967.

Rehearing Denied March 9, 1967.

Fischer, Wood, Burney & Nesbitt, Frank W. Nesbitt, Corpus Christi, for appellant.

Boone, Davis, Cox & Hale, G. Cole Thomson, Corpus Christi, for appellees.

## OPINION

GREEN, Chief Justice.

Appeal is from a take-nothing judgment for defendant-appellees rendered after the court sustained their motion for an instructed jury verdict.

This lawsuit involves a lease-purchase contract dated September 19, 1960, between

National Leasing Company, an Illinois corporation, as lessor-owner, and Marine Services of Corpus Christi, Inc., as lessee, covering a tug boat, and an agreement whereby appellees agreed to guarantee performance of the lease-purchase contract with certain limitations on their individual financial responsibility.

In the late Summer or early Fall of 1960, Marine Services of Corpus Christi, Inc., was incorporated under the laws of Texas for the purpose of furnishing towing and ship fueling services in the Corpus Christi area. Appellees M. H. Allen, Jr. and W. A. Allen and attorney Keith Merrick were the sole stockholders and officials of said company, with M. H. Allen, Jr., being the majority stockholder and president, and actual manager of its affairs. For the purpose of acquiring a tug boat necessary in the business of the company, M. H. Allen, Jr., went to New Orleans in September, 1960, and located the tug M/V Ray which was for sale. He made an agreement with the owner West Bank Towing Company for the purchase by Marine Services of the boat for $65,000.00, paying down $7,500.00, with the remainder to be paid in thirty days.

Allen, in order to finance the deal, entered into negotiations with a lease broker that resulted in the purchase by National Leasing Company of the M/V Ray from its owners for the sum of $65,000.00, which included credit for the $7,500.00 cash payment. Thereupon, National Leasing Company, as owner and lessor of the tug, and Marine Services of Corpus Christi, Inc., as lessee, signed and entered into the lease purchase contract, hereafter called the lease.

National Leasing was not satisfied that Marine Services of Corpus Christi, Inc. had a sufficiently sound financial structure, and before it would enter into this agreement it required that the two Allens sign a personal guarantee of performance by their company, and that W. A. Allen agree not to dispose of certain of his assets during the term of the lease agreement. Accordingly, appellees did sign and deliver to Na-

tional Leasing the instrument upon which appellant relies in this suit to fix appellees' liability, and which reads as follows:

"We, M. H. Allen, Jr. and W. M. Allen, do hereby, in consideration of the foregoing charter party, individually, jointly, and in solido, guarantee performance of the foregoing charter party by MARINE SERVICES OF CORPUS CHRISTI, INC., except however, financial liability incurred under this guarantee is not to exceed the difference, if any, between face value of the charter party, less total paid and less amount recovered from disposal or salvage of assets covered by this agreement, and less amount recovered from any other source.

/s/ M. H. Allen, Jr.
————————————
M. H. Allen, Jr.

/s/ W. M. Allen
————————————
W. M. Allen "

The term "charter party" was shown to be synonymous with and mean the same as the lease contract.

W. M. Allen also signed and delivered to National Leasing a letter promising not to dispose of his assets during the five-year term of the lease.

The lease between National Leasing and Marine Services was executed September 19, 1960. It provided that the term of the lease of the tug began on said date, and unless sooner terminated would expire sixty months later. Monthly rental charges of $1,489.80 each were to be paid in advance to lessor by lessee, with the provision that either party had the right to cancel the agreement on the anniversary date by giving the other party at least thirty days written notice, and in the event of cancellation, lessee agreed to purchase the tug boat at the original value of $65,000.00, less a cancellation credit of 10% at the end of the first year, 30% at the end of the second year, 50% at the end of the third year, 70% the fourth year, or 90% the fifth year. Thus, if the lessee paid his twelve monthly installments of $1,489.80, and the lease was

cancelled by either party on the first anniversary date, i. e., at the end of one year, lessee contracted to buy the tug, receiving 10% credit on the purchase price of $65,-000.00 so that the sum to be paid in addition to the twelve monthly rental payments of $1,489.80 each would be $58,500.00, less the $7,500.00 down payment designated in the lease as a deposit as security for prompt and full payment of rent and faithful and timely performance of the lease. If the lessee continued to pay monthly rental for sixty months, which payments would have totalled $89,388.00, it would be entitled to a credit of 90% on the original purchase price of $65,000.00 toward the purchase of the tug.

The lease further provided that it was understood between the parties that lessor contemplated assigning the lease and all its rights thereunder. By written instrument dated September 27, 1960, lessor National Leasing assigned without recourse the lease agreement and written guarantee and all its rights thereunder to Walter E. Heller & Company, Inc., the plaintiff in the trial court and appellant here. Lessee Marine Services paid only two monthly rentals, one to National Leasing before the assignment, and one on November 17, 1960, to appellant. No further payments have been made. In January or February, 1961, when lessee was unable to meet its payments, appellant by telephone contacted appellee M. H. Allen, Jr., president of lessee company with reference to selling the M/V Ray and applying the proceeds to the balance due under the terms of the lease agreement. Allen advised appellant that his company was no longer able to keep up with the payments, or otherwise acquire the tug, and agreed that the tug should be sold and the proceeds applied to the amounts due under the charter party (lease contract) in an effort to reduce the amount of losses as much as possible. Thereafter, on February 24, 1961, the M/V Ray was sold by appellant for $50,000.00 which sum, and also the amount of the two rental payments and $7,500.00 deposit were credited to lessee's account.

It was appellant's contention in the trial court, and is also on appeal, that when lessee defaulted on its rent payments, appellant was entitled to declare the entire amount of rent provided for under the lease agreement, i. e., sixty monthly rentals of $1,489.80 each, being a total sum of $89,-388.00, less the rentals paid by lessee, to be due and payable. It sought judgment for $28,958.40 unpaid rentals, being the total sum just mentioned less the two monthly rentals paid, the $7,500.00 deposit, and the $50,000.00 received from the sale of the boat, and also interest and attorney fees. Appellant contends that appellees had guaranteed performance of the lease contract by lessee, and hence were individually liable for such unpaid rents, interest and attorney fees.

In the trial court, appellees assigned as reasons for granting their motion for an instructed verdict three grounds as follows: (1) That the term "face value of the charter party" purporting to limit the liability of the defendants on their written guarantee renders said instrument so ambiguous and uncertain of meaning that as a matter of law it is not a binding agreement of any kind as to the defendants; (2) that the sale of the tug boat on February 27, 1961, terminated the lease agreement as a matter of law, and plaintiff is not entitled to recover the unearned rentals sued for; (3) that the lease agreement provides for the enforcement of a penalty, and that as a matter of law plaintiff is not entitled to enforce said penalty against these defendants. It is upon these grounds, and each of them, with some variations that appellees rely to uphold the judgment.

The decree of the trial court does not specify the reason or reasons upon which the instructed verdict was granted other than that the court sustained appellees' motion. We are mindful of the rule that the question presented on appeal is whether the prevailing party was entitled to judgment as a matter of law, and not whether he was entitled to judgment on the specific grounds alleged. If there are no

material fact issues raised by the evidence to be submitted to the jury, the court is authorized to instruct a verdict on its own volition regardless of the sufficiency or not of a motion. In re Price's Estate, Tex. Sup.Ct., 375 S.W.2d 900, 904; Harvey v. Elder, Tex.Civ.App., 191 S.W.2d 686, writ ref.; Rockett v. Texas State Board of Medical Examiners, Tex.Civ.App., 287 S.W. 2d 190, writ ref., n. r. e.; Anderson Furniture Co. v. Roden, Tex.Civ.App., 255 S.W. 2d 345, writ ref., n. r. e.

■ We shall also be guided by the rule that on an appeal from a judgment based on an instructed verdict, the evidence supporting the appellant's position must be accepted as true, and all conflicts and inconsistencies must be resolved in appellant's favor. Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859, 865; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60.

The first ground in support of the court's judgment as here presented is that the term "face value of the charter party" causes the guaranty contract to be ambiguous so that without further pleading and proof by appellant its meaning is so uncertain that it does not constitute a valid agreement binding on appellees.

It is the theory of appellant that the guaranty agreement is not rendered ambiguous by the use of the term "face value" in the second clause thereof; that said term as used has a definite, certain meaning, and that it can refer to nothing other than the value to lessor of performance by lessee of the lease contract, which value is the payment of the monthly rentals of $1,489.80 for the full term of the lease, being sixty months, or a "face value" of $89,388.00; that the parol evidence rule would prohibit admission of evidence of the meaning of "face value" as contained in the instrument. Appellant further argues that if it should be held that said clause is ambiguous, there was no obligation on appellant, as plaintiff below, to plead and prove the existence of an ambiguity in the

terms of the "proviso" contained in the second clause of the guaranty, or to plead or prove that such ambiguity, if any had any certain meaning; that the burden in this respect was on appellees of proving an enforceable proviso as well as the facts bringing the case within the terms thereof, they being the parties relying on the exception as a defense. Finally, in this respect, appellant contends that if it had any burden of pleading and proving the construction to be placed on the agreement, it complied with this burden by making the guaranty agreement and the lease contract exhibits to its petition and placing them in evidence, and alleging appellees' liability for the total amount of rents for the sixty months of the lease period less the credits given as heretofore stated.

Appellees' contentions on this phase of the case are outlined in their brief as follows: (1) That a contract is ambiguous if it is of uncertain meaning or is reasonably susceptible to two or more meanings; (2) that the "guaranty contract" can be reasonably read so as to hold the appellees' liable for any one of a number of sums of money depending upon the meaning given the term "face value"; (3) that there are several ways that the term "face value" can be understood, as that term is used in the guaranty contract, due to its inappropriateness in relation to the lease purchase contract, and each of the understandings is reasonably supported by the words of the instruments involved; (4) that the guaranty contract is thus rendered ambiguous and uncertain since it does not give a fixed sum for which the appellees are liable and unless definite meaning is given it by further pleading and proof, the appellant should not be allowed to recover under it; (5) that the appellant refused to plead or prove up the meaning of the guaranty contract and the trial court had no alternative except to grant appellees' judgment at the end of appellant's evidence.

Appellees in the trial court in their answer to appellant's petition duly plead the limitation on their liability under the guar-

anty agreement, and ambiguity of the term "face value" as used in such agreement.

■ It is clear that the lease and the guaranty agreement, having been executed as a part and parcel of the same transaction, must be construed together. Camp v. Dallas Nat. Bank, Tex.Civ.App., 21 S.W.2d 104, 108, affirmed on this point in Camp v. Dallas Nat. Bank, Tex.Com.App., 36 S.W.2d 994.

The guaranty agreement executed by appellees contains two clauses, each of which embodies a distinct undertaking. The first clause to the word "except" would, if it stood alone, be an unconditional guarantee of performance of the lease contract by lessee Marine Services of Corpus Christi, Inc., and would have obligated appellees to respond in damages to the same extent that Marine Services would be so obligated in case of breach by the latter of the terms of its lease contract. But it appears clear that the parties intended that there should be a limit to the financial responsibility of the Allens, so the second clause was added which provided that their financial liability would not exceed the difference, if any, between face value of the charter party, less total paid and less amount recovered from disposal or salvage of assets covered by this agreement, and less amount recovered from any other source.

The controversy here arises over the interpretation to be placed on the term "face value of the charter party." All authorities to which we have been cited concerning the meaning of face value have reference to bills, notes, bonds, insurance policies, or other documents which on their face purport to carry obligations of a stated monetary amount. Supreme Council, American Legion of Honor v. Storey, Tex. Civ.App., 75 S.W. 901, 905, modified in other respects 97 Tex. 264, 78 S.W. 1; Bank of Miami v. Young, Tex.Com.App., 208 S.W. 656; Thompson v. North Texas Nat. Bank, Tex.Com.App., 37 S.W.2d 735, 738; Great Southern Life Ins. Co. v. Cunningham, 128 Tex. 196, 97 S.W.2d 692.

In Tinder v. United States, 2d Cir., 193 F.2d 720, reversed on other grounds, 345 U.S. 565, 73 S.Ct. 911, 97 L.Ed. 1250, the court in construing a statute on theft of mail providing the punishment where the value or face value of any article stolen does not exceed $100.00, said:

"The word 'value' obviously refers to market, actual or computable value of a tangible thing, and the words 'face value' were doubtless inserted to comprehend securities such as promissory notes, bonds or other documents which on their face purport to carry obligations of a stated monetary amount."

See also Wilson v. Justice's Court of San Diego, TP., 22 Cal.App.2d 278, 70 P.2d 695; American Nat. Bank of Portsmouth v. Ames, 169 Va. 711, 194 S.E. 784, 789.

We have found no case where the term "face value" was applied to a lease contract such as the one in this cause.

■ Appellant contends that since the agreement of appellees was to guarantee performance of the lease contract by lessee, such performance was of necessity payment of the monthly rentals for the maximum period of sixty months, and that the face value of the lease was the value of such performance. That is one construction which could be given. However, we do not believe that it is the only reasonable interpretation to be placed on the term. According to the provisions of the lease, *either party*, lessor or lessee, had the right to cancel the agreement on any anniversary date, i. e., either one year, two years, three years, four years, or five years from September 19, 1960, in which event lessee was *required* to purchase the tug at the original value of $65,000.00 less cancellation credit as heretofore stated. Hence the value of performance was uncertain and indefinite, and could be either of several amounts, and the total amount for which appellees would be liable under the guaranty contract would also be indefinite and uncertain and subject to two or more interpretations, so that the

guaranty contract made the basis of appellees' liability is to such extent ambiguous.

█ Where the meaning of a contract is uncertain and doubtful, or where the agreement is subject to more than one reasonable meaning unresolvable by rules of construction, the contract is rendered ambiguous, and parol evidence is admissible to show the true intention of the parties, and to explain such ambiguity. Skelly Oil Company v. Archer, 163 Tex. 336, 356 S.W.2d 774; Neece v. A.A.A. Realty Co., 159 Tex. 403, 322 S.W.2d 597; Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

It is appellees' additional contention that the lease-purchase contract, with its relative short term and the allegedly high rentals, its cancellation privilege and requirement of purchase by lessee on cancellation on the terms heretofore stated, and its other provisions, was under the proven facts treated by the parties as a debt financing and security arrangement, and that the parties considered the amount being financed, to-wit the purchase price of $65,000.00 as the face value of the lease contract. This is the only lump sum mentioned in the lease, and the various cancellation purchase prices are based on this sum and it is clear from a study of the entire agreement and the facts leading to its execution that it was a method of financing the purchase of a $65,000.00 tug.

We do not find as a matter of law that the term "face value of the charter party" could mean only $65,000.00, or any of the sums for which lessee could have purchased the tug on the various anniversary dates of the signing of the lease, and thus have performed its contract, nor do we find that such term could not have been intended to mean $89,388.00 as contended by appellant. We do hold that under the circumstances it is an uncertain term that could have reasonably been understood by the parties to have meant any of the figures, and that its use caused the guaranty contract to be

ambiguous in the sense discussed in the Skelly Oil Company and Neece cases, supra.

█ The burden was on appellant as plaintiff to prove its case. It could prove it in two ways: by securing a holding that the guaranty contract was unambiguous and could be given only the construction for which it contends, or, if the contract were ambiguous, by introducing evidence that the parties intended it to have the construction which appellant gave it. Skelly Oil Company v. Archer, supra, syl. (4) at page 778 of 356 S.W.2d; Neece v. A.A.A. Realty Co., Tex.Sup.Ct., supra. We have found the guaranty agreement to be ambiguous because of the indefinite, uncertain meaning to be given the term "face value of the charter party". Unlike the plaintiffs in Skelly, appellant here offered no evidence in the trial court bearing on the intention of the parties. Its position at all stages of the trial was that the agreement was not ambiguous, and that it could have only the one meaning ascribed to it by appellant. By supplemental petition and by motion in limine appellant stood firm on the position that the guaranty contract was complete within itself, and that it had a definite meaning as a matter of law, and that parol evidence was not admissible to explain the instrument. It is a well established rule of law that the parties are restricted in the appellate court to the theory on which the case was tried in the lower court. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, on rehearing, page 245.

█ Appellant contends that appellees had the burden of pleading and proving the existence of a definite and certain proviso in the guaranty contract which would somehow limit their financial liability as created in the first clause, and to prove the facts bringing the case within the terms of such proviso; and that appellant-plaintiff had no burden of pleading or proving any part of the proviso or of any facts bringing the case within its terms. We do not agree with appellant on this proposition. Appellees did meet the burden of pleading the

ambiguity of the proviso. Under our Texas authorities, the burden of proving its cause of action, and the extent of appellees' liability under the guaranty was on appellant. Sherman v. Provident American Insurance Co., Tex.Sup.Ct., decided Oct. 5, 1966, 10 Sup.Ct.Jour. 26; Hardware Dealers Mutual Insurance Co. v. Berglund, Tex.Sup.Ct., 393 S.W.2d 309; Paulson v. Fire Insurance Exchange, Tex.Sup.Ct., 393 S.W.2d 316; Shaver v. National Title & Abstract Co., Tex.Sup.Ct., 361 S.W.2d 867, 98 A.L.R.2d 531; Skelly Oil Company v. Archer, Tex. Sup.Ct., supra; Neece v. A.A.A. Realty Co., Tex.Sup.Ct., supra; Mergenthaler Linotype Co. v. Herrmann, Tex.Civ.App., 217 S.W.2d 122, writ ref., n. r. e.; Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530.

■■■ For the reasons heretofore stated, appellant failed to meet its burden of pleading and proving its cause of action against appellees on the guaranty contract, and the court did not err in rendering judgment for appellees.

The conclusions reached above require an affirmance of the judgment. We shall nonetheless consider the remaining points contained in the briefs of the parties.

Paragraph 17 of the lease contract sets forth the rights of lessor in the event of default by lessee as follows:

"17. Default. If Lessee with regard to any item or items of equipment fails to pay any rent or other amount herein provided after the same is due and payable, or if Lessee with regard to any item or items of equipment fails to observe, keep or perform any other provisions of this lease required to be observed, kept or performed by Lessee, Lessor shall have the right to exercise any one or more of the following remedies:

"(a) To declare the entire amount of rent hereunder immediately due and payable as to any and all items of equipment, without notice or demand to Lessee.

"(b) To sue for and recover all rents, and other payments, then accrued or thereafter accruing, with respect to any and all items of equipment.

"(c) To take possession of any and all items of equipment, without demand or notice, wherever same may be located, without any court order or any process of law. Lessee hereby waives any and all damages occasioned by such taking of possession. And said taking of possession shall not constitute a termination of this lease as to any and all items of equipment unless Lessor expressly so notifies Lessee in writing.

"(d) To terminate this lease as to any and all items of equipment.

"(e) To pursue any other remedy of law or in equity.

"Not withstanding any repossession, or any other action which Lessor may take, Lessee shall be and remain liable for the full performance of all obligations on the part of Lessee to be performed under this lease. All such remedies are cumulative and may be exercised concurrently or separately."

■■■ For reasons fully discussed by Chief Justice Hickman in Stewart v. Basey, Tex.Sup.Ct., 150 Tex. 666, 245 S.W.2d 484, and which in the interests of brevity need not be repeated, the provisions for stipulated damages arising from the authority purported to be given lessor in (a) and (b) above in the event of any breach of the provisions of the lease should be treated as a penalty, unenforcible as to lessee and to appellees as guarantors; and appellant should be relegated to its actual damages under proper pleadings and proof. See also Christie, Mitchell and Mitchell Co. v. Selz, Tex.Civ.App., 313 S.W.2d 352, writ dism.; Abramson v. Rashti, Tex.Civ.App., 373 S.W.2d 699, writ ref., n. r. e.

■■■ Appellant in the instant case did not sue for its damages resulting from lessee's anticipatory breach of the contract,

as the appellant had sued alternatively in Stewart v. Basey, opinion of Court of Civil Appeals, 241 S.W.2d 353. If it had, the proper measure of damages where there was no reletting of the leased property would have been the difference between the present value of the rentals contracted for in the lease and the reasonable cash market value of the lease for its unexpired term.[1] White v. Watkins, Tex.Civ.App., 385 S.W.2d 267; John Church Co. v. Martinez, Tex.Civ.App., 204 S.W. 486, 489, writ ref.; San Antonio Brewing Ass'n v. Brents, 39 Tex.Civ.App. 443, 88 S.W. 368, writ ref.; Davidson v. Hirsh, 45 Tex.Civ.App. 631, 101 S.W. 269, n. w. h.; Massie v. State Nat. Bank, 11 Tex.Civ.App. 280, 32 S.W. 797; 32 Am.Jur., Landlord and Tenant, Sec. 161, p. 157. See Employment Advisors, Inc. v. Sparks, Tex. Sup.Ct., 368 S.W.2d 199; Amco Trust, Inc. v. Naylor, Tex.Civ.App., 311 S.W.2d 257, rev. on other grounds Tex.Sup.Ct., 317 S.W. 2d 47, 73 A.L.R.2d 1109.

Hence, appellant was not entitled to recover for future rentals as such, which is what it sued for. It was not entitled to judgment for delinquent rents, for the court was justified under the facts in off-setting rents past due at the time of the agreed sale of the tug with the $7,500.00 deposit which served as security for the prompt and full payment of rent and faithful and timely performance of the lease.

Failure to pay rent was the only act of non-performance with which lessee was charged; and hence when the lessee was deprived of the use of the tug and the lease was terminated and no claim was made by appellant in the trial of this suit for damages for anticipatory breach, the security could serve only as a deposit to be applied to rent delinquent at the time of such termination.

Appellees contend that the undisputed facts surrounding the sale of the tug by appellants with the agreement of lessee for the purpose of reducing the losses constituted a surrender by lessee and acceptance thereof by appellant which abrogated or terminated all of lessee's and appellees' obligations toward appellant. To constitute such a surrender, there must be a mutual understanding to such effect between the parties either expressed or implied from their words and actions, and its existence is usually a fact issue. 36 Tex. Jur.2d § 260, pp. 113–114; Patteson v. McGee, Tex.Civ.App., 350 S.W.2d 241; Nutt v. Berry, Tex.Civ.App., 323 S.W.2d 500; Barret v. Heartfield, Tex.Civ.App., 140 S. W.2d 942, writ ref. Where the circumstances and acts of the parties are equivalent to an agreement on the part of the tenant to abandon the leased premises and of the landlord to resume possession a surrender results as a matter of law. Dearborn Stove Co. v. Caples, 149 Tex. 563, 236 S.W.2d 486; Barret v. Heartfield, supra; Nutt v. Berry, supra; William H. Beard Dredging Co. v. Hughes, 2d Cir., 121 F. 808; Cutler Gate Building Corp. v. United States Leasing Corp., Dist. Ct. of Appeals, Florida, 165 So.2d 207. However, it is not necessary that we determine whether there was a surrender and acceptance as a matter of law, or whether a fact issue was raised by the evidence, since as has been stated above, appellant was not entitled to recover future rentals as such accruing after the disposition of the tug, and there was neither pleading nor proof of actual damages incurred by appellant.

So far, we have considered the penalty, surrender and damage features as they affect the rights of appellant and lessee Marine Services of Corpus Christi, Inc. The suit against appellees is based on the

---

1. The tug boat, having been sold, the lease was terminated and had no reasonable cash market value; therefore the measure would have been the present value of the unaccrued rents, less credits to which lessee, and appellees, should be entitled, provided lessee and appellees were not relieved of liability by reason of a surrender of the tug by lessee and acceptance by lessor as a matter of law. There was no evidence in the record of any such value.

guaranty contract executed by them, heretofore copied in this opinion.

 The liability of a guarantor is in general measured by that of the principal, and will be so construed unless a less or greater liability is expressly assumed by a guarantor. Where under the conditions of the contract no liability has arisen on the part of the principal, there is no liability on the part of the guarantor. 38 C.J. S. Guaranty § 43, p. 1192; Cullum v. Commercial Credit Co., Tex.Civ.App., 134 S.W. 2d 822. The contract will be strictly construed to impose only those burdens clearly within its terms. 38 C.J.S Guaranty § 50, p. 1203.

 As we construe the guaranty contract, the guarantors (appellees) did not expressly assume a liability greater than that of lessee Marine Services of Corpus Christi, Inc. under the lease contract. By the first clause, they guaranteed performance by lessee, but their financial responsibility was limited in the second clause so as not to exceed the difference, if any, between face value of the lease contract less total paid and less amount recovered from disposal or salvage of the assets covered by the agreement, and less amount recovered from any other source. Omitting the second clause, their liability was co-extensive with that of lessee. Assuming that the term "face value" is not ambiguous, the second clause does not increase appellees' liability, but is clearly intended to put a limitation or ceiling thereon. Lessee was not a party to the guaranty contract, and its position is not affected by reason of the guaranty having been executed by appellees. There is nothing contained in said guaranty contract which would cause the guarantors to be liable for a greator amount than lessee, or to be liable where lessee is not.

The trial court did not err in sustaining appellees' motion for an instructed verdict, and rendering a take-nothing judgment.

Affirmed.