Edward B. FLANERY, Appellant,

v.

TERRY FARRIS STORES, INC., et al., Appellees.

No. 452.

Court of Civil Appeals of Texas.

Corpus Christi.

March 13, 1969.

Rehearing Denied April 3, 1969.

Helm, Jones & Pletcher, David H. Burrow, Houston, Smith, McIlheran & Jenkines, Garland Smith, Weslaco, for appellant.

Hall, Mills & Hall, Harry L. Hall, Mission, Adams, Graham, Lewis & Graham, John E. Lewis, Harlingen, for appellees.

## OPINION

GREEN, Chief Justice.

Appeal is from a judgment rendered for defendants-appellees after the court had sustained their respective motions for an instructed verdict.

The suit was instituted by appellant Edward B. Flanery to recover damages allegedly sustained by his wife when she was struck and injured on December 17, 1960 while a customer in the store of appellee Terry Farris Stores, Inc., hereafter called Terry Farris, by some glass from a Herculite tempered glass door manufactured by appellee Pittsburgh Plate Glass Company, hereafter called Pittsburgh. When the case went to trial before the court and jury in May, 1968, the sole remaining defendants were appellees *Terry Farris* and *Pittsburgh.* Upon completion of the evidence the trial court granted motions for an instructed verdict filed by said two defendants, withdrew the case from the jury and, pursuant to a summary judgment previously granted defendant A. W. Dodson d/b/a Superior Glass Company, rendered a take-nothing judgment.

This appeal concerns only the plaintiff-appellant and the two defendants Terry Farris and Pittsburgh; appellant does not question the judgment favorable to Dodson.

## APPEAL AS TO APPELLEE PITTSBURGH PLATE GLASS CO.

Appellant's points concerning the alleged error in instructing a verdict for appellee Pittsburgh read as follows:

### "FIRST POINT OF ERROR

"The Trial Court erred in instructing a verdict for the defendant, Pittsburgh Plate Glass Company, and failing to submit the case to the jury because the defendant, Pittsburgh Plate Glass Company, was negligent in failing to warn that the herculite tempered glass door in question had the tendency, after penetration or near penetration of the compression envelope by a chip or scratch, to disintegrate under what appears to be slight or no provocation, and such negligence was a proximate cause of plaintiff's damages.

### "SECOND POINT OF ERROR

"The Trial Court erred in instructing a verdict for the defendant, Pittsburgh Plate Glass Company, and failing to submit the case to the jury because the defendant, Pittsburgh Plate Glass Company, was negligent in marketing a glass door for use in a retail store that is subject to spontaneous disintegration and

such negligence was a proximate cause of plaintiff's damages.

## "THIRD POINT OF ERROR

"The Trial Court erred in instructing a verdict for the defendant, Pittsburgh Plate Glass Company, and failing to submit the case to the jury because there was a defect in the door at the time it was marketed by Pittsburgh Plate Glass Company, and such defect was a producing-cause of plaintiff's damages."

The suit had been pending for six years prior to the trial. During that period a number of pre-trial hearings had occurred, and as a result of the trial court's rulings at such hearings, amendments of the pleadings to allege more specifically the basis of the defendants' liability had been required. Consequently, the case went to trial on plaintiff's fifth amended petition, and Pittsburgh's fourth amended answer.

It is apparent from the allegations in the pleading that plaintiff predicated his cause of action against Pittsburgh upon the alleged *negligence* of Pittsburgh in marketing the door *without giving warning* to the purchaser or the general public, including plaintiff, of the certain characteristics of the tempered glass alleged in the pleading, and upon his allegations that *such negligence in failing to warn* was the proximate cause of plaintiff's injuries.[1]

■ It is well settled that a party is entitled to go to the jury only on those issues raised by the pleadings *and* the evidence. Rule 277 Texas Rules of Civil Procedure; Harkey v. Texas Employers' Insurance Ass'n, 146 Tex. 504, 208 S.W.2d 919; Parker v. Gulf Colorado & Santa Fe Railway Co., Tex.Civ.App., 401 S.W.2d 265; Travelers Insurance Company v. Sides, Tex.Civ. App., 403 S.W.2d 519, wr. ref. n. r. e.; McPherson v. Billington, Tex.Civ.App., 399 S.W.2d 186, wr. ref. n. r. e.

■ In considering the matter of determining whether material fact issues as plead were raised by the evidence on the trial, we shall be governed by the principles of law applicable to an appeal from an instructed verdict. On such appeal, the evidence in the record supporting appellant's position must be accepted as true, and

---

1. The allegations of plaintiff's trial pleading of Pittsburgh's liability read as follows:

" * * * The incident of December 17, 1960, which is made the basis of this suit, was proximately caused by the negligence of the defendants, and each of them as is particularly set forth in the next paragraph. As a result of such negligence, Mrs. Flanery has sustained injuries and your plaintiff has suffered damages which will be set out hereinafter with more particularity in Paragraph IV of this petition.

III.

Your plaintiff would show unto the Court and Jury upon information and belief that the glass door in question was installed in the store sometime before April 1, 1948. The defendant, PITTSBURGH PLATE GLASS COMPANY, designed and manufactured the door. Plate glass of the type used in the door in question has a tendency to fly into pieces in case of breakage and this was well known by PITTSBURGH PLATE GLASS COMPANY. Likewise PITTSBURGH PLATE GLASS COMPANY well knew that the type of door involved in the incident made the basis of this suit would disintegrate and explode under apparent slight or even no pressure or stress and that even the slightest chip or penetration of the glass would result in the entire door becoming unstable and subject to disintegration under slight stress or even spontaneously. Notwithstanding such knowledge PITTSBURGH PLATE GLASS COMPANY marketed the door in question without warning the purchaser or the general public which might be exposed to the door of its character. The defendant, PITTSBURGH PLATE GLASS COMPANY, was negligent in failing to warn TERRY FARRIS STORES, INC. of such and such failure was a proximate cause of the injuries and damages sustained by plaintiff. PITTSBURGH PLATE GLASS COMPANY also was negligent in failing to warn plaintiff and the general public that its doors were subject to such disintegration and such failure was a proximate cause of plaintiff's injuries and damages."

all conflicts and inconsistencies must be resolved in appellant's favor. We must disregard all evidence and the inferences therefrom favorable to appellees, and interpret the evidence and all the reasonable inferences to be drawn therefrom most favorable to appellant. Hart v. Van Zandt, Tex.Sup.Ct. 399 S.W.2d 791; Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859; Walter E. Heller & Company v. Allen, Tex. Civ.App., 412 S.W.2d 712, 716, wr. ref. n. r. e.

On December 17, 1960, Mrs. Flanery, wife of appellant, was Christmas shopping in the Terry Farris Store located in Mc-Allen, Texas. While standing about 5 to 7 feet from the door in question examining a display shelf, she heard what sounded like a big explosion, and felt a piece of glass from the door strike her leg above the ankle. She looked toward the direction of the front door of the store and saw that the glass from the door had disintegrated. At that time she noticed that no one was standing near the door, and that there were no rocks or other objects on the floor which could have struck the door. She testified that it was like an avalanche of glass—the glass broke into pieces of various sizes, and a large piece —she stated like a boulder—hit her on the leg. She suffered serious injuries therefrom, and on the date of the trial, over seven years later, she testified she was still in pain and felt adverse effects from her wound.

The door which "exploded" was a Herculite tempered glass door manufactured by Pittsburgh and sold by it to Superior Glass Company (Dodson) in 1948. The glass was about ¾ of an inch thick, and the door weighed 200 pounds. This door and three other similar doors manufactured by Pittsburgh were installed in Terry Farris Store by Superior in 1948 as the entrance doors from the outside sidewalk into said store.[2] No copy of the manual (N–2) was furnished Terry Farris, its architect, or Dodson. The evidence reflects that about two months after the doors were installed in

2. The following explanation of Herculite glass is taken from a manual issued in 1948 by Pittsburgh, and introduced in evidence as its Ex. 9.

DEFINITION OF HERCULITE AND GENERAL COMMENT

Introduction

"Herculite" is the trade name applied to a type of plate glass obtained by subjecting normal, annealed, plate glass products in thicknesses not less than ¼", plus or minus 1/32", to a special heat treatment which imparts greatly increased mechanical strength and resistance to thermal stresses. The physical characteristics of Herculite are such that all other fabrication must be completed before the heat treatment process.

Although Herculite is 4½ to 5 times as strong as annealed glass of the same thickness, it is breakable, and when broken, cracks up into innumerable small fragments of more or less cubical shape. Herculite is most easily broken by impact from a small sharp object, such as a center punch. Its resistance to impact by relatively large, smooth objects, such as a ½ pound steel ball or an eleven pound shot bag, is even more than five times the resistance of regular plate glass of the same thickness.

The great strength of Herculite results from the fact that the heat tempering process places the surface and adjacent fibres under high compressive stress, with balancing tension stresses in the core fibres. Indirectly, this highly stressed condition occasionally causes Herculite to disrupt under what appears to be slight, or no provocation. The surface or edge may be chipped (perhaps by striking against some sharp object; while unpacking or otherwise handling) to such a depth that the compression layers may be almost penetrated, and as a result the balance between compression and tension forces is placed in a state of delicately unstable equilibrium. Such a plate may be placed in storage or in service, and at some subsequent time—hours, weeks, or even months later—a relatively slight stress, induced perhaps by temperature changes, or a chance superimposition of thermal stresses upon normal operating stresses, may cause apparently spontaneous failure. Since the manufacturer has no control over these conditions of handling and use, Herculite can no more be guaranteed against breakage than any other type of glass.

1948, one of them broke accidentally; the witness was not able to furnish any details as to why. Another similar door was substituted at Pittsburgh's expense. The witness who testified concerning this prior breaking did not believe this replacement was the door which "exploded" and injured plaintiff's wife.

The door that "exploded" and injured Mrs. Flanery had no aluminum or other form of metal frame or casing around its edges to prevent it from becoming chipped or scratched. As stated in the excerpt from the Pittsburgh manual copied supra (N–2) and elaborated on by expert witnesses, the highly stressed condition of Herculite glass caused by the heat tempering condition occasionally causes such glass to disrupt under what appears to be slight or no provocation such as the surface or edge becoming chipped to such a depth that the compression layers may be almost penetrated. Spontaneous failure after being placed in service may be caused "by temperature changes, or a chance superimposition of thermal stresses upon normal operating stresses." Pittsburgh gave no warning to its customer Superior Glass Company or to Terry Farris about such disintegration characteristics of these glass doors, and according to the witness Dodson, proprietor of Superior, the only instructions furnished him by Pittsburgh before he installed these doors in Terry Farris Store were to the effect that no attempt should be made to cut, drill or otherwise alter the glass—no other warning concerning the tendency to break or disintegrate was given to him, or given by him to Terry Farris.

There was evidence to show that Herculite tempered glass is subject to failure and "explosion" on slight or no provocation; that Pittsburgh knew that such delayed action may occur when the surface or edge of the glass door is chipped or damaged to such a depth that the compression layers are almost penetrated and the balance between compression and tension force is placed in a state of delicately unstable equilibrium; that Pittsburgh knew that such penetration, either partial or incomplete, can be caused by a long continued abrasive action to the edge of the door by a pebble or some object becoming lodged between the bottom of the door and the threshold. None of this information was given its customer, Superior Glass Company, nor to Terry Farris or its architect. Expert witnesses expressed the opinion that the breakage of the door in December, 1960, could very well have been caused by a pebble or other foreign object that was lodged on the threshold of the door, causing the door to receive damage to its compression envelope when it was opened and closed. When the door was installed in 1948, the architect for Terry Farris had specified Type P doors, which had a metal frame completely across the top and bottom of the door, serving to protect the door from contact with small objects which might otherwise cause damage. Because such Type P doors were not available, and without receiving any warning from Pittsburgh of the special characteristics of the glass heretofore stated, Terry Farris and its architect accepted the G type doors which were not protected by metal frame around the edges. The evidence further shows that immediately after this door did "explode" in December, 1960, causing the injury to Mrs. Flanery, Terry Farris had the other three Type G doors removed, and replaced all four doors with lighter doors which were protected all around the glass with aluminum frame. Thus, a fact question arises as to whether Terry Farris would have allowed the substitution of the Type G doors with no metal frame for the Type P doors which had such protection when the doors were installed in 1948 if they or their architect had been properly advised of the complained of characteristics of Herculite tempered glass. One of Pittsburgh's expert witnesses, an architect, agreed that it would be very important for the manufacturer to warn of the distintegration characteristics of the door.

■ It is now established that a manufacturer is under the duty to adequately warn of the foreseeable inherent dangers attendant upon proper and intended use of its products. Otis Elevator Company v. Wood, Tex.Sup.Ct., 436 S.W.2d 324; Rumsey v. Freeway Manor Minimax, Tex.Civ. App., 423 S.W.2d 387; Charles Pfizer and Company v. Branch, Tex.Civ.App., 365 S. W.2d 832, and authorities cited.

■ In our opinion the evidence and the reasonable inferences to be drawn therefrom, when considered most favorable to appellant, raise fact jury issues concerning the alleged negligence of Pittsburgh in failing to warn of the alleged nature of the door in question, and also as to whether such negligence, if any, was a proximate cause of the injuries to Mrs. Flanery. Point of Error No. 1 is sustained.

The contentions made by appellant in his second and third points were not raised by his pleadings, and are overruled.

### APPELLEE TERRY FARRIS STORES, INC.

Appellant's last two points of error concern his appeal from the judgment in so far as it sustained the motion of Terry Farris for an instructed verdict. His fourth point reads:

### "FOURTH POINT OF ERROR

The Trial Court erred in sustaining a special exception to plaintiff's pleadings and denying the plaintiff the benefit of the doctrine of res ipsa loquitur because the defendant, Terry Farris Stores, Inc., was liable for plaintiff's damages under the doctrine of res ipsa loquitur."

■ In his third amended original petition plaintiff plead the doctrine of res ipsa loquitur against defendant Terry Farris. This defendant excepted to such plea; however, such exception was overruled by the trial court in its pre-trial order of February 2, 1967. Notwithstanding this ruling, appellant later filed two amended petitions,

his fourth and fifth (the fifth amended petition being his trial pleading) and in neither of these did plaintiff-appellant plead the doctrine of res ipsa loquitur against Terry Farris. As a consequence, appellant waived any right he might otherwise have had to rely upon the plea of res ipsa loquitur. Appellant's fourth point of error is overruled.

■ By his fifth point of error, appellant contends that Terry Farris was negligent in permitting the door in question to be installed when they knew or should have known that such door was subject to disintegrating and exploding, and that such negligence was a proximate cause of Mrs. Flanery's injuries. We find no evidence in the record to support such contentions. Appellant, in an effort to show that Terry Farris should have known that this type door was subject to "explode" does refer to the fact that one of the four doors installed in 1948 broke two months after it had been installed. The only reference to such occasion in the evidence is that such door broke "accidentally", and that Pittsburgh replaced it with a similar door; there was no showing of a spontaneous "explosion", or that it broke under circumstances similar to the occurrence that gave rise to this lawsuit. In connection with this point of error, we note that appellant based his case against Pittsburgh on his allegations and proof that Terry Farris did not receive warning of the complained of nature of Herculite tempered glass doors and that Terry Farris did not know of the alleged dangers in the door in question. Appellant's fifth point is overruled.

The judgment favorable to appellee Pittsburgh Plate Glass Company is reversed and the case against Pittsburgh is remanded to the trial court for retrial. The judgment favorable to appellee Terry Farris Stores, Inc. is affirmed.

Costs of appeal are assessed one-half against appellant and one-half against appellee Pittsburgh.